# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ANGELLA FARR CROSBY, | |
| Petitioner, | Case No. 3:13-cv-00529-REB |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | |
| Respondent. | |

Pending before the Court is Angella Crosby's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny her claim for Title II Social Security Disability benefits and Supplemental Security Income payments. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On December 17, 2013, Petitioner Angella Crosby ("Petitioner") filed an application for Social Security Disability benefits and Supplemental Security Income benefits, alleging a disability onset date of August 9, 2005. AR 21. Petitioner's claims were initially denied, and denied again on reconsideration on August 26, 2011. On October 20, 2011, Petitioner timely filed a Request for Hearing before an Administrative

**MEMORANDUM DECISION AND ORDER - 1**

Law Judge ("ALJ").  Petitioner appeared and testified at a hearing held December 3, 2012.  During that hearing, Petitioner amended her alleged disability onset date to March 11, 2011.  On April 26, 2013, ALJ Caroline Siderius held a supplemental hearing in Spokane, Washington, at which time Petitioner, represented by attorney Erica Wood, appeared and testified.  A vocational expert, Jinnie Lawson, and an impartial medical expert, Marian Martin, also appeared and testified.  AR 21.

On May 17, 2013, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council.  On October 16, 2013, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-4.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that the ALJ erred by (1) failing to discuss or give any weight to the portions of Dr. Holmes's opinion; (2) failing to find anxiety as a severe impairment at step two of the sequential inquiry; (3) failing to give proper weight to the opinion of treating psychologist, James Phillips, Ph.D.; and (4) denying benefits for a failure to follow prescribed treatment without showing that Petitioner refused to follow prescribed treatment as required under SSR 82-59.

## II.  <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*,

**MEMORANDUM DECISION AND ORDER - 3**

981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. <u>DISCUSSION</u>

### A.    **Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since March 11, 2011, Petitioner's application date. AR 23.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the

claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ determined that Petitioner has the following severe impairments: bipolar I, borderline personality disorder, obesity, degenerative disc disease, and asthma. AR 23.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying listed impairments. AR 24.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work

must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded Petitioner retained the residual functional capacity to perform medium work, with some postural and environmental limitations. AR 25-26. The ALJ further limited Petitioner to "up to 3 step tasks and simple repetitive well-learned tasks with only occasional changes in the work setting." AR 26. The ALJ also found: "There should be no more than average production requirements. She is limited to superficial contact with the public and coworkers. The claimant should work primarily alone with occasional supervision and should work primarily with things rather than people." AR 26. Additionally, she is unable to perform any past relevant work. AR 36.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing work found in significant numbers within the relevant economy, such as working as a price marker or a parking lot attendant. AR 36. Therefore, based on Petitioner's age, education, work experience, and residual functional capacity, the ALJ

**MEMORANDUM DECISION AND ORDER - 7**

concluded that Petitioner was not under a disability as defined in the Social Security Act.
AR 36-37.

**B.    Analysis**

Petitioner does not challenge the AJL's findings and conclusions as to her alleged
physical limitations, instead raising issues related only to the ALJ's findings and
conclusions related to her mental impairments.  She also has not challenged the ALJ's
credibility finding, *i.e.*, that Petitioner is not credible and her description of her symptoms
and limitations are "unpersuasive".  *See* AR 30.

1.    Treating Source Opinions

Petitioner argues that the ALJ failed to accord proper weight to opinion evidence
offered by Dr. James Phillips and Dr. T. Stephenson Holmes, both of whom are treating
physicians.

The Ninth Circuit distinguishes among the opinions of three types of physicians:
(1) those who treat the claimant (treating physicians); (2) those who examine but do not
treat the claimant (examining physicians); and (3) those who neither examine nor treat the
claimant (nonexamining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995).
Generally, more weight is accorded to the opinion of a treating source than to nontreating
physicians.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  In turn, an examining
physician's opinion is entitled to greater weight than the opinion of a nonexamining
physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753
F.2d 1450 (9th Cir. 1984).  If the treating physician's opinion is not contradicted by

another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Additionally, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

a.      *Dr. James Phillips*

The ALJ accorded "little weight" to the opinion of Dr. Phillips, relying instead on the testimony of Dr. Martin, the medical expert at the second hearing, and Petitioner's reported activities. AR 34–35. Petitioner argues that the ALJ relied solely on Dr. Martin's testimony to disregard Dr. Phillips's opinions, but the record demonstrates that the ALJ also considered that Petitioner's own testimony indicated she was able to engage

in volunteer activities.  *See* Reply Br., p. 5 (Dkt. 22).  This finding undermined Dr.

Phillip's opinion that Petitioner had "marked limitations" in her activity of daily living

and social functioning.  AR 33.  The ALJ appropriately relied on both Petitioner's

activities and Dr. Martin's testimony[1] in giving little weight to Dr. Phillip's opinion.

Additionally, the ALJ credited the opinions of reviewing doctors who assessed

Petitioner's mental limitations based on their reviews of her medical records.  They found

Petitioner could perform at least simple, routine tasks if her contact with others was

limited and they assessed mild to moderate limitations.  AR 31, 116-18, 133–35.  The

ALJ noted that these doctors "are highly qualified physicians and psychologists who are

experts in the evaluation of the medial issues," and he gave their opinions "significant

weight" because they are "supported by the evidence and consistent with the record as a

whole."  AR 31.

Moreover, the ALJ discussed the medical records and opinions in detail[2] and

specifically found that the opinions of Drs. Seidenfeld and Sanford were supported by the

"unremarkable mental status examination findings and the absence of any aggressive

treatment."  AR 32 (citing to AR 651, Nurse Practitioner Chad Lewis's note that he

"started questioning her diagnosis at length", and AR 757, Lewis's notes on a medical

---

[1]  Although Dr. Martin did not review the "E" exhibits in the record, which contain the
Petitioner's functional reports, these mostly relate to Petitioner's own self reports, and the ALJ
found Petitioner not credible.  *See* AR 902, 281-360.  Dr. Martin reviewed all the medical
records available before the hearing and appropriately relied on them to form her opinions.

[2]  *See* AR 29–35.

**MEMORANDUM DECISION AND ORDER - 10**

visit describing Petitioner's medication regimen). The ALJ also gave "significant weight" to the opinion of Dr. Rebecca Alexander, who performed a psychological consultative examination and performed "objective psychological testing, which showed that the claimant's memory and overall functioning was in the low average range." AR 32–33 (citing AR 772–73, Dr. Alexander's Wechsler Memory Scale Test Results).

Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving only little weight to Dr. Phillips's opinion.

### b. Dr. T. Stephenson Holmes

Dr. Holmes assessed some marked and several moderate limitations in Petitioner's functioning. AR 362–63. At the hearing, in response to counsel's question, the vocational expert testified that the moderate limitations assessed by Dr. Holmes, taken together, "would preclude work just even at the moderate level." AR 926–27. Petitioner argues the ALJ erred in not incorporating these moderate limitations in his Residual Functional Capacity Assessment because the ALJ did not explain why Dr. Holmes's opinions about Petitioner's moderate limitations were not adopted; rather, the ALJ discussed only Dr. Holmes's assessment of marked limitations. Indeed, the ALJ specifically discussed and rejected only Dr. Holmes's marked limitations findings. The ALJ did so based on her finding that the marked limitations were "due to spotty medication adherence." AR 32.

Petitioner not only takes issue with the ALJ ignoring the moderate limitations in Dr. Holmes's assessment, but also with the ALJ's reliance on Petitioner not consistently

taking the medication that helps with her mental condition.[3] Dr. James Phillips reported

that Petitioner's imperfect compliance with her medication regimen was due to her mental

illness. *See* AR 728–30. Although the ALJ properly discounted parts of Dr. Phillips's

assessment, as discussed above, the ALJ did not discuss the portion of Dr. Phillips's

report that indicated Petitioner's mental condition contributed to her imperfect medicine

compliance.

Additionally, the ALJ relied on Petitioner's failure to take her medicine, and its

impact on her limitations, to discount several medical and other opinions. *See* AR 33

(relying on Petitioner's ability to control her bipolar symptoms when on medication to

give less weight to the opinions of Dr. Rebecca Alexander, and Sandy Philips, LCSW);

AR 34 (relying in part on the medical evidence demonstrating that Petitioner's bipolar

symptoms were well controlled when she consistently took her psychiatric mediation to

discount testimony of a psychological rehabilitation counselor, Justine Arabi).

The ALJ may consider a claimant's lack of compliance with medical directives

and medications, but where there is evidence that the illness itself may be the cause, the

---

[3] To the extent Petitioner seeks to rely on SSR 82-59 to support the latter argument, the Court finds that Ruling does not apply to the facts of this case. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions"); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (SSR 82-59 does not apply unless the Commissioner "premise[s] the denial of benefits *solely* on the [claimant's] failure to follow prescribed treatment.") (emphasis added; alterations in original). *See also Colcord v. Colvin*, No. 6:13-CV-02068-MA, 2015 WL 589305, at *6 (D. Or. Feb. 11, 2015) (finding "the ALJ fails to acknowledge that plaintiff's lack of adherence to taking her medications is a significant symptom of her mental illness").

AJL should discuss that possibility and explain why she is relying on the failure to take medication despite the fact such failure might be caused by the mental illness.[4] Here, the ALJ did not do so. Although the ALJ discussed some of Dr. Martin's testimony and, in turn, Dr. Martin explained that individuals with bipolar disorder may go off their medications at times[5] (but Petitioner did not fit the usual pattern), the ALJ did not discuss that part of Dr. Martin's testimony. And, even though Dr. Martin's statements may provide reasons the ALJ could have discounted record evidence that the bipolar disorder caused Petitioner to not take her medication consistently, the ALJ did not consider those statements, or any other record evidence, in discounting Dr. Holmes's testimony.[6] Under

---

[4] *See, e.g., Reed v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-00553-MA, 2015 WL 1246249, at *5 (D. Or. Mar. 17, 2015) (with regard to a claimant's credibility, evidence of unexplained or inadequately explained failure to follow a prescribed course of treatment may be considered but, where a claimant provides evidence of a good reason for not taking medication for his symptoms, his symptom testimony cannot be rejected for not doing so) (citations, alterations, and internal quotation marks omitted). Although this relates to a credibility finding, the same rationale supports requiring the ALJ to consider the reasons a claimant may not be taking medication before using that as the sole justification to discount a treating physician's opinions.

[5] Dr. Martin explained: "they sort of feel good when they are in a hypomanic or manic period, and sometimes they are reluctant to sort of dampen that down with medication," but "after a while they realize they're better off taking [medication]." AR 905. She then commented that Petitioner's "records seem to indicate a somewhat differ[ent] pattern . . . and just sort of consistently it looks like she consistently misses meds here and there." *Id.*

[6] For example, Dr. Seidenfeld noted "Dr. Holmes['s] opinion is not supported by his own exams," and"contrasts sharply with the other evidence in the record." AR 114, 118. Dr. Sanford reached the same conclusion. AR 131, 135. But, the ALJ did not mention these records or any others in discounting Dr. Holmes's opinions. Instead, the ALJ relied solely on Petitioner's lack of compliance with her medications and that her symptoms resolved when she consistently took the medications.

these circumstances, where the ALJ relied on just one factor to discount Dr. Holmes's testimony, and the record contained evidence that factor itself may be caused by Petitioner's mental illness, the ALJ's reason for giving Dr. Holmes's opinions little weight is not supported by the required substantial evidence and this case will be remanded for the ALJ to consider whether Petitioner's mental illness caused her to not consistently take her medication and whether, even with inconsistent medication compliance, Petitioner is not disabled. In the alternative, the ALJ may rely on other specific and legitimate reasons to discount Dr. Holmes's testimony.

Finally, to the extent the ALJ relied *solely* on Petitioner's spotty medicine adherence to discount other opinions in the record, the ALJ shall revisit her decision as to how much weight to give those sources. However, because Petitioner did not specifically challenge the ALJ's treatment of these sources except with regard to the medicine compliance issue, if the ALJ provided another reason to support her decision on how much weight to give those sources' opinions, the ALJ is not required to revisit her determinations.

2. <u>Petitioner's Anxiety</u>

Petitioner also argues that the ALJ erred at step two analysis by not addressing her anxiety. To the extent the ALJ may not have considered any limitations caused by Petitioner's anxiety, she should do so on remand.

# IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

Here, the ALJ did not properly consider all of the evidence.  Specifically, the ALJ provided only one reason for discounting the opinion of treating physician Stephenson Holmes, and that reason—failure to consistently take medication that helped alleviate Petitioner's mental illness—also may be caused by Petitioner's mental illness.  The ALJ must provide specific and legitimate reasons for rejecting Dr. Holmes's opinion, and although there may be other reasons in the record that could support the ALJ's treatment of Dr. Holmes's opinion, the ALJ did not rely upon those reasons and the Court cannot supply the rationale for the ALJ.  *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (the court is "constrained to review the reasons the ALJ asserts").

This is not to say that this Court conclusively finds that Petitioner is disabled.  Relatedly, it is not for this Court to resolve the question of whether Petitioner is disabled when considering all the relevant medical evidence and how Dr. Holmes's opinions may factor into the ALJ's determination.  Rather, the Court is charged with reviewing the basis of the ALJ's decision, highlighting those areas that may call into question the decisions

reached by the ALJ, and, in doing so, should not be misunderstood as substituting its own judgment for that of the ALJ's.

The Court finds the cumulative nature of the ALJ's decision does not afford the Court confidence that the ALJ fairly considered all the evidence in the record, at least how it is reflected in the ALJ's decision. This action is therefore remanded to allow the ALJ to revisit the opinion of Dr. Holmes and Petitioner's anxiety diagnosis. In other words, because the Court has doubts as to whether Petitioner is, in fact, disabled, *see Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014), this case is remanded to the ALJ for further proceedings on an open record. On remand, the ALJ is not required to revisit her determination as to Petitioner's credibility, Dr. Phillip's opinion to the extent it was discussed and properly discredited, or any other evidence. *Burrell v. Colvin*, 775 F.3d 1133, 1135 (9th Cir. 2014).

## V. ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED, in part. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **March 31, 2015**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge